765 A.2d 1077

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
TAHIR S. GREGORY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 15, 2000—Decided January 29, 2001.

Before Judges BAIME, CARCHMAN and LINTNER.

*Joel M. Harris*, First Assistant Public Defender, attorney for appellant (*Joan D. Van Pelt*, Deputy Public Defender, of counsel and on the brief).

*John J. Farmer, Jr.*, Attorney General, attorney for respondent (*H. John Witman, III*, Deputy Attorney General, of counsel and on the brief).

CARCHMAN, J.A.D.

This appeal requires us to determine whether a conviction for third-degree possession of cocaine with intent to distribute, *N.J.S.A.* 2C:35–5a(1) and –5b(3) (Section 5), merges for the purposes of sentencing with a conviction for second-degree possession of cocaine with intent to distribute within 500 feet of public property, *N.J.S.A.* 2C:35–7.1 (Section 7.1). We answer that question in the affirmative and remand this matter for resentencing.

Pursuant to a "no show/no recommendation" plea agreement, defendant Tahir S. Gregory entered a guilty plea to the above offenses. Under the terms of the plea agreement, the State agreed that if defendant appeared for his presentence and sentence obligations, it would recommend a four-year term of imprisonment, the presumptive term for a third-degree offense, even though defendant entered a plea to a second-degree offense; if defendant failed to appear, the State was permitted to seek a greater sentence "in the second-degree range."

Defendant failed to appear for his presentence interview. On March 19, 1999, defendant was sentenced to a term of eight years in prison for the Section 7.1 conviction and to a concurrent four-year term for the Section 5 offense. Mandated penalties and assessments were also imposed.

At the plea hearing, defendant admitted that he possessed cocaine in his motel room residence with the intent to share it with

his friends. The motel was within 500 feet of the beach, a park or public place within the scope of Section 7.1.

Defendant appeals, raising the following issues:

POINT I

THE COURT ERRED IN FAILING TO MERGE THE OFFENSE OF POSSESSION WITH INTENT TO DISTRIBUTE INTO THE GREATER OFFENSE OF POSSESSION WITH INTENT TO DISTRIBUTE WITHIN 500 FEET OF A PUBLIC PARK OR PLACE. (Not Raised Below)

POINT TWO

THE SENTENCE IMPOSED BY THE COURT WAS AN ABUSE OF DIS-CRETION IN THAT IT VIOLATED THE REASONABLE UNDERSTAND-ING OF THE DEFENDANT AND WAS MANIFESTLY EXCESSIVE AND THEREFORE MUST BE REDUCED.

A. The Court's Statement To Defendant That If He Failed To Appear He Would Receive A Seven-Year Term Precluded A Greater Sentence.

B. The Imposition Of An Eight-Year Term On Count Three Was Manifestly Excessive, Given The Nature Of The Offense.

We first address the issue of whether the Section 5 conviction merges with the Section 7.1 conviction. The operative provision of Section 7.1 which generates the issue provides:

a. Any person who violates subsection a. of N.J.S.[A.] 2C:35–5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while in, on or within 500 feet of the real property comprising a public housing facility, a public park, or a public building is guilty of a crime of the second degree, except that it is a crime of the third degree if the violation involved less than one ounce of marijuana.

. . . .

c. Notwithstanding the provisions of N.J.S [A.] 2C:1–8 or any other provisions of law, a conviction arising under this section shall not merge with a conviction for a violation of subsection a. of N.J.S.[A.] 2C:35-5 (manufacturing, distributing or dispensing) or N.J.S.[A.] 2C:35–6 (employing a juvenile in a drug distribution scheme). Nothing in this section shall be construed to preclude or limit a prosecution or conviction for a violation of N.J.S.[A.] 2C:35–7 or any other offense defined in this chapter.

The issue of merger of similar offenses has been the subject of substantial discussion and analysis. In *State v. Gonzalez,* 123 *N.J.* 462, 464, 588 *A.*2d 816 (1991), the Supreme Court reversed on Judge Skillman's dissent and held that third- or fourth-degree Section 5 convictions merged into convictions under *N.J.S.A.* 2C:35–7 (Section 7) for the sale or distribution of a controlled

dangerous substance within 1000 feet of a school. In reaching that result, the Court relied upon Judge Skillman's statutory interpretation analysis concluding that Section 7's antimerger provision barred the merger of convictions under that section into convictions under Section 5, but did not apply to bar the merger of convictions under Section 5 into convictions under Section 7. *Ibid.* Judge Skillman's analysis recognized two factors which are germane to our consideration of the issue under review. In determining the legislative intent of Section 7's antimerger provision, he first observed that "[t]he essential objective of [Section 7] is to impose a mandatory period of parole ineligibility upon any person who commits one of the specified drug offenses within 1,000 feet of school property or a school bus." *State v. Gonzalez,* 241 *N.J.Super.* 92, 101, 574 *A.*2d 487 (App.Div.) (Skillman, J., dissenting), *certif. denied,* 122 *N.J.* 400, 585 *A.*2d 399 (1990), *rev'd,* 123 *N.J.* 462, 588 *A.*2d 816 (1991). He then concluded that the Legislature did not intend to preclude the merger of a Section 5 conviction into a Section 7 conviction, as there was no reciprocal antimerger provision in Section 5, a legislative prerogative commonly utilized in other statutory schemes. *Id.* at 102, 574 *A.*2d 487 (noting the reciprocal antimerger provisions of *N.J.S.A.* 2C:35-3 and *N.J.S.A.* 2C:35-6). The omission of any antimerger provision in Section 5 thus led Judge Skillman to conclude that "the Legislature was satisfied to leave questions of the merger of [Section 5] convictions into [Section 7] convictions to be decided in accordance with the general principles of merger set forth in *N.J.S.A.* 2C:1-8a." *Id.* at 102-03, 574 *A.*2d 487. *Gonzalez* involved the merger of a third-degree Section 5 conviction. In adopting Judge Skillman's dissent, the Court explicitly reserved for the future the question of whether first- and second-degree Section 5 offenses would also merge into Section 7 convictions. 123 *N.J.* at 464-65, 588 *A.*2d 816.

That issue was soon resolved in *State v. Dillihay,* 127 *N.J.* 42, 601 *A.*2d 1149 (1992), when the Court determined that the antimerger provision of Section 7 violated federal constitutional dou-

ble-jeopardy principles when applied to first- or second-degree Section 5 offenses:

> We hold that convictions for school-zone offenses must merge into convictions for related first- or second-degree Section 5 offenses, but that in such cases a mandatory minimum sentence no less severe than that required by the school-zone statute should nevertheless be imposed on defendants convicted of a Section 5 offense.

[*Id.* at 45, 601 *A.*2d 1149.]

In reconciling the antimerger provision of Section 7 with the Section 5 sentence, the Court observed:

> On its face, that provision prohibits merger of a school-zone conviction with any other violation of Section 5. Nevertheless, whether the statutory language contemplates multiple punishments for convictions under both Section 5 and Section 7, or whether it serves only to prohibit merger for sentencing purposes in order that the mandatory minimum sentence authorized in Section 7 be preserved is unclear.
>
> Had the Legislature intended multiple punishment, it could have explicitly authorized consecutive sentencing for related Section 5 and Section 7 offenses. However, Section 7's non-merger provision neither mandates nor refers to consecutive sentencing, leaving to the discretion of the sentencing court whether to impose single or multiple punishment for convictions of related Section 5 and Section 7 offenses. In such cases courts typically have imposed concurrent rather than consecutive sentences. The normative choice of concurrent rather than consecutive sentences suggests that related violations of Section 5 and Section 7 do not ordinarily justify consecutive sentences.

[*Id.* at 49, 601 *A.*2d 1149.]

After an extensive constitutional merger analysis under the *Blockburger* test,[1] *Blockburger v. United States*, 284 *U.S.* 299, 304, 52 *S.Ct.* 180, 182, 76 *L.Ed.* 306, 309 (1932), and in an effort to preserve both the legislative intent and constitutionality of Section 7, the Court again noted that the Legislature's prime concern was to preserve the mandatory minimum sentence required under Section 7. *Id.* at 50–53, 601 *A.*2d 1149 (citing *Gonzalez, supra,* 123

---

[1] Under the *Blockburger* test, "the court must 'determine whether the defendant is unconstitutionally faced with multiple punishment for the 'same' offense.'" *State v. Parker,* 335 *N.J.Super.* 415, 422, 762 *A.*2d 690, (App.Div.2000) (quoting *State v. Maldonado,* 137 *N.J.* 536, 580, 645 *A.*2d 1165 (1994) (quoting *Dillihay, supra,* 127 *N.J.* at 47–48, 601 *A.*2d 1149)). "[T]wo offenses are considered to be the same unless 'each [offense] requires proof of an additional fact which the other does not.'" *Ibid.* (quoting *Blockburger,* supra, 284 *U.S.* at 304, 52 *S.Ct.* at 182, 76 *L.Ed.* at 309).

*N.J.* at 464, 588 *A.*2d 816; 241 *N.J.Super.* at 99–108, 574 *A.*2d 487 (Skillman, J., dissenting)).

> We base our decision on a construction that effectuates the legislative intent and simultaneously avoids the constitutional issue posed by non-merger. Accordingly, we hold that the school-zone statute must be construed to allow merger of school-zone offenses into first- and second-degree Section 5 offenses provided that a defendant convicted of a drug offense in a school zone is sentenced to no less than the mandatory minimum sentence provided in the school-zone statute. We acknowledge an apparent inconsistency in preserving the mandatory minimum sentence authorized by Section 7 in the context of our holding that the Section 7 conviction must merge into the Section 5 conviction. That result, however, reflects the Legislature's clear intent to impose an enhanced punishment for those who violate Section 5 while in a school zone. Thus, Section 5 should be construed and understood to require imposition of Section 7's mandatory minimum term as part of the sentence imposed on any defendant convicted of a second-degree Section 5 offense and a related Section 7 offense; in respect of first-degree Section 5 convictions, the statute expressly provides for a mandatory minimum sentence.
>
> [*Id.* at 55, 601 *A.*2d 1149.]

The Court also addressed a similar merger provision in *State v. Maldonado,* 137 *N.J.* 536, 645 *A.*2d 1165 (1994), and concluded that multiple convictions and sentences for Section 7 and drug-death violations, *N.J.S.A.* 2C:35–9, did not merge under the *Dillihay/Blockburger* analysis, as the statutes' purposes were substantively different and each offense contained a separate element. *Maldonado, supra,* 137 *N.J.* at 582–83, 645 *A.*2d 1165.

Finally, in *State v. Parker,* 335 *N.J.Super.* 415, 762 *A.*2d 690 (App.Div.2000), we addressed the issue of merger as applied to multiple convictions and punishments for Section 7 violation and Section 7.1 violations. Applying the same constitutional principles and analyses utilized in *Dillihay* and *Maldonado,* we determined that merger was required. *Id.* at 421, 762 *A.*2d 690. We observed that "defendant's conduct represented a single criminal event, the underlying offending conduct consisting solely of possession of cocaine on a single date in a single location." *Id.* at 426, 762 *A.*2d 690. We thus concluded:

> imposing two concurrent sentences on defendant for violating [Sections 7 and 7.1] does not comport with traditional merger principles. Accordingly, merger of the third[-]degree section 7 conviction into the second[-]degree section 7.1 conviction was required, *with the thirty-month parole disqualifier imposed under Section 7, surviving the merger.*

*[Id.* at 426, 762 *A.*2d 690]

After considering the above line of cases, we are satisfied that we need not engage in the constitutional analysis outlined in *Dillihay, Maldonado* and *Parker,* as the statutory analysis described in *Gonzalez* provides a sufficient underpinning to resolve the issue before us.

As we noted earlier, Judge Skillman observed in *Gonzalez* that the object of the antimerger provision in Section 7 is to impose a mandatory period of parole ineligibility upon persons committing drug offenses within 1000 feet of school property: "The evident intent of the antimerger provision was to assure that the period of parole ineligibility mandated by [Section 7] would not be negated by the merger of a conviction under [Section 7] into a conviction for another offense which does not mandate a period of parole ineligibility." *Gonzalez, supra,* 241 *N.J.Super.* at 101, 574 *A.*2d 487. A similar consideration is relevant in evaluating the intent of the antimerger provision of Section 7.1.

The sentencing scheme involving a second-degree Section 7.1 violation and a third-degree Section 5 violation reflects a similar, but not identical, provision. Section 7, a third-degree offense, imposes a mandatory period of parole ineligibility; Section 7.1 does not. However, the Legislature clearly balanced the absence of a mandatory minimum by elevating most Section 7.1 offenses to second-degree offenses. By so doing, it exposed convicted defendants to more significant penalties, including a presumption of imprisonment. *N.J.S.A.* 2C:44–1d. We conclude that in promulgating the antimerger provision, the Legislature intended a result here similar to that intended for Section 7 offenses, to preserve the more stringent punitive impact of a Section 7.1 conviction. That intent is implemented by merging the Section 5 third-degree conviction into the Section 7.1 second-degree conviction and sentencing defendant as a second-degree offender.

We note that although Section 7.1 was adopted in 1997, after the *Gonzalez, Dillihay,* and *Maldonado* decisions, the Legislature did not alter the antimerger provision to suggest that it would be

reciprocal. The State urges that the additional language in the Section 7.1 which provides that "[n]othing in this section shall be construed to preclude or limit a prosecution or conviction for a violation of [Section 7] or any other offense defined in this chapter" indicates such intent. We rejected that view in *Parker* as applied to Section 7 and 7.1 offenses, and we see no need to revisit the issue here. *Parker, supra,* 335 *N.J.Super.* at 425–26, 762 *A.*2d 690.

We therefore conclude that the third-degree Section 5 conviction merges into the Section 7.1 conviction, and that defendant must be sentenced as a second-degree offender consistent with the Section 7.1 conviction.

■ Finally, we reject defendant's contention that the judge erred in sentencing defendant to eight years imprisonment rather than the presumptive seven-year term. We first note that defendant entered into a plea agreement for a four-year term provided he attended his presentence and sentencing proceedings. He failed to comply with those requirements, and the plea agreement consequently became a "no recommendation" agreement. Although the judge referred to the presumptive seven-year term at the plea hearing, clearly, he was not expressing an upper-limitation. Moreover, the plea form defendant executed explicitly set forth that defendant was exposed to a maximum term of fifteen years of imprisonment. In sum, we find no merit to defendant's argument that his ultimate sentence is excessive.

We remand to the Law Division for imposition of defendant's sentence consistent with this opinion.